Airware Holdings Incorporated Mr. Padmanabhan, you have five minutes for rebuttal, is that right? Yes. Okay. Please begin whenever you're ready. May it please the Court. Your Honor, we're before you on two issues. The first is the District Court down below committed legal error when it improperly applied the wrong law to decide Airware's motion for reimbursement of some of its fees and costs in the context of a Rule 41 motion. The main problem that the District Court had was it didn't use the controlling law in the Ninth Circuit. The Ninth Circuit law, the controlling law is the Westlands case and the Steve Adoring case. Instead of using those cases, what the District Court did was in rejecting our argument for conditioning the voluntary dismissal based on reimbursement of fees and costs, it cited the Hecklethorne case from the Ninth Circuit. The Hecklethorne case has nothing to do with this issue. What the Hecklethorne case really does is it tells the circuit that Rule 41 is not the case. You need an independent basis to do that, whereas our motion under Rule 41 was specifically to the party. As such, it's a clear error and an abuse of discretion. Even if the Court was wrong in citing Hecklethorne, you're not saying that the District Court did not have discretion to do what it did? Your Honor, the District Court does have discretion to decide the conditions under Rule 41, but at the end of the day, it didn't do the proper analysis. It didn't consider the appropriate rules. If you look at the Westland case and you look at the Steve Adoring case, you'd see that under the Ninth Circuit, the Westland case specifically says, in a situation like ours where we've incurred substantial fees and costs in defending an action, that that is the type of injury where it is considered as part of Rule 41 and the District Court is obligated to do that. As I understand the Ninth Circuit law, there's no requirement that mandates any District Court judge to grant fees under 41A2 under circumstances like this. It's within the judge's discretion. And as I understood the judge's opinion here, he did say that he retains the discretion on whether to grant fees in this instance. Yes, and I agree with Your Honor that he does have that discretion, but the problem that the judge has is he applied the wrong law and that is a clear error. That is a clear abuse of discretion. It's a per se abuse of discretion. If he had applied the right law and done the analysis, then the discretion is broad enough to where we wouldn't be able to really appeal his judgment. But in this case, he clearly used the wrong law to reach a conclusion instead of doing the analysis that's required by the Ninth Circuit cases. I'm sorry, go ahead. He did consider the fact that there was a covenant not to sue as a significant factor here. And Your Honor, on the covenant not to sue, three points. One, none of that is Ninth Circuit law. Two, none of the cases he relies on is Ninth Circuit law. Two, Ninth Circuit has no rule that says that if there's a covenant not to sue, that obviates granting of reimbursement of fees and costs under Rule 41. No, but it's a factor that the court took into account in exercising its discretion under Rule 41. But it's not, in applying that factor and the rules it cites from the Missouri case, the problem for the court is it's not consistent with Ninth Circuit law. So if you were to go back to Steve Adoring and you were to go back to the Westland case, they are very specific to say, Westland says it would be, this is the type of situation where Rule 41, they'd have to consider reimbursing fees and costs. Second, if you look at the Steve Adoring case, it explicitly cites, explicitly says why you have Rule 41, which is so that defendants aren't unfairly affected. They cite to an Eleventh Circuit case, which is the McCants case, that also says ordinarily in these situations, plaintiffs aren't permitted to get a voluntary dismissal without prejudice unless a portion of the defendant's fees and costs are paid. Now, those are ordinary circumstances. All we're asking for is that the court actually apply those rules and explain why in this can't make out a case for infringement, a viable theory for infringement, and we've incurred the cost of defense, of defending this action. All we're asking for is the court to actually apply that and say why in this ordinary circumstance, why is this not an ordinary circumstance where we get at least a portion of our fees and costs paid as part of the conditions for this voluntary dismissal that plaintiff is requesting. Is Hexhorn really, do we have to read it and understand it as only preventing sanctions, 41A2 sanctions against attorneys without an independent basis? I know that was the facts of that case, but I'm wondering what is the principle for why we would treat 41A2 differently or under a different analytical framework when trying to figure out whether to punish attorneys versus whether to punish parties. The language of the rule itself doesn't make any such distinction. I agree with you, Your Honor, but the reason I think this court would have to make that distinction between attorneys and parties is in the text of Hexhorn. So the Hexhorn case, when they analyze that issue, they specifically go through a body of law that says that if you're going to assess fees against attorneys, other than that you have a specific independent basis. And the two that they talk about towards the end of that page are Rule 11 and 1927. And they say because Rule 41, as drafted, is more general, that it can't be applied specifically to attorneys and should only be applied to parties. And that is the law of that circuit. So Hexhorn, a very fair read, is that it really is a case that tells you… What was the rationale for treating an attorney differently from a party? The rationale is, I think it goes back to the basic notion that every party pays its own lawyer. And if you're going to shift and have an attorney have sanctions like this where they're reimbursing for fees and costs, then the statute has to be more specific and actually say the attorney is part of the group there that would be potentially liable under that clause. They say if it's a general one, then the rule is it's not to the attorney. But as I understand it, there's no Ninth Circuit case that says that Rule 41A2, when it comes to attorneys, you need an independent basis, but when it comes to parties, you do not need an independent basis. There's nothing in the Ninth Circuit that makes it that clear, right? I think… You should be asking us to sort of extrapolate on that. No, I don't think I would be. I think if you read Hecklethorne, it says… I read Hecklethorne. And I think it's fair that in Hecklethorne, what they're really saying is for a lawyer, you need an independent basis. And if you go back to Westland and Steve Adoring, there is no language even suggesting that you need an independent basis for parties. And I think what Hecklethorne really does is draw that outer boundary for Rule 41A as it applies to attorneys as opposed to parties because that case is specifically to attorneys and that's what the court is addressing. What does independent basis mean? Does that mean you have to just provide some kind of rationale as the basis for why you would be awarding fees? Or does it mean you need some separate statutory section or rule to point to to justify awarding fees? And so you're not even using 41A2 anymore. I think it's the latter. I think the way Hecklethorne's written, especially that paragraph after the two-part paragraph discussion on this issue, there's a paragraph that leads with two provisions that are in the rules that you can use for an independent basis. It starts with Rule 11 in Section 1927. And so one read would be that the independent basis there is a separate statutory section. Now, I don't know that body of law completely to know if there's another case out there that expanded beyond that. But if you were to read the four corners of Hecklethorne, I think that's where that's going with the independent basis. And that's why when the court here says there's no independent basis, they're going to Rule 41 and it's just clearly an improper use of it. I guess you're 1927? Yes. On 1927, Your Honor, the error that the court makes here is an assessment of the fact. If you look at this record, the failure of the court to recognize that under this record there is not a viable infringement theory is the error of the court. From the very beginning of this case to the end of this case, they've had this product. This is the product. And they have never identified the barrier that's in the claim. The claim has both parts. It requires both a barrier and it requires this function that the volatile substance doesn't touch your skin. But the key is that the claim says the barrier is what stops the volatile substance from touching the skin. They've had this product from the very beginning. They've submitted claim charts. Never once have they told us what the barrier is. To this day, they've never identified the barrier. And it's fundamental to patent law that they have to identify something that meets every limitation in the claim. It seems to me you're making a claim construction argument. Your Honor, I'm not making a claim. In fact, what makes this case particularly egregious is they got their claim construction argument. So you can imagine at the time they filed, whatever was their broadest claim construction that they felt that they could get, even under that theory, they can't come up with a viable infringement theory. This is not one of those cases where I'm saying if you construe it this way, it's not viable. If you construe it the other way, it is viable. There is not a viable theory. I'm not even talking about plausibility. I'm saying no one's articulated a theory at all as to why this device that's been accused infringes a claim in that patent. The district court said that one portion could be the carrier. One portion could be the barrier. I think what the district court said was the record is not unequivocal. I think that's where they've made the mistake because the district court has never identified any part of this as a barrier or a carrier. In fact, during the claim construction, they had shown the district court a sample of the accused product and the court even said, noted that it couldn't find a barrier. You didn't present or provide any technical documents, right, in terms of how you manufacture your devices? We did provide it during discovery, Your Honor. I thought there was a motion to compel. There was a motion to compel, but we provided, if I remember right, we provided videos in May, maybe. So the district court was wrong factually when it said in its opinion that you didn't provide any technical documents? Yes, they were wrong about that. We did absolutely provide technical documents. They knew the method of, they had videos of the method of manufacture, and then they also took the depositions of Mr. Dolezal and Mr. Dahl, which are, they knew the method of manufacture and discussed it. Did you point that out in your briefing? I think we did, Your Honor. Okay. I believe we did. You never filed a summary judgment motion. And the reason we didn't, we had contemplated it. The reason we didn't file a summary judgment motion was the court had the claim construction and we felt like if we tried to jump the gun, we're going to have to go through claim construction and then see how that plays out before we're going to be able to be successful on a summary judgment motion. Also, we felt if we put the facts in as we know it, no matter what, they're going to have a 56F motion to try to do the discovery they need to do. And so we thought it would actually make the cost greater than they already were. Okay. Let's hear from the other side. Mr. Ossock, is that right? Ocheck. Ocheck. Okay. Thank you. Thank you, Your Honors. May it please the court. The district court's decision should be affirmed for three reasons. First, Airware's primary argument on this appeal, and pervasive argument on this appeal, that Clarice allegedly failed to identify a barrier in the accused products or articulate a theory of infringement as the barrier is false and belied by the record before this court. The fact is Clarice did identify a barrier based on specific information provided by Airware. It's demonstrated by the record in this case and it was acknowledged by the district court. Did you point to a specific element in Airware's device that serves as the barrier? Absolutely, Your Honor. Looking at, and this is just for an example in the record, the Joint Appendix 121, and this is the case management report that was submitted by both parties in January of 2013. And this is where the court had asked for the parties to set forth their claims and counterclaims. We set forth the specific information that we relied on that was provided by Airware's CEO to our CEO. And this is a paragraph we cite throughout our brief, but if you look at the last sentence, that's the first full paragraph on JA 121, Mr. Rezas stated that Airware's products were designed and manufactured so that there were no essential oils on the ring that touches the inside of the nose and that the essential oils in the products do not touch the skin in any way. As this demonstrates, we did identify a barrier. The ring that touches the inside of the nose, and he didn't ask for permission to give this to the court, but the ring that touches the nose on the outside of this product, Airware's CEO represented that the products were designed so that ring that touches the nose had no essential oils. Therefore, that satisfied the barrier limitation. The district court's construction of barrier was a portion of the vehicle that prevents contact between the skin and the volatile substance. And Clarice's infringement position was that that ring that touches the inside of the skin, otherwise the outer portion of the device, which was represented as having no essential oils and thus preventing contact between the skin and the volatile substance, which was exactly in line with the court's claim construction. And the court recognized this in its December 2013 decision. It pointed to that information in the Joint Case Management Report as setting forth Clarice's position with respect to the barrier. On JA30, this is page 30, I'm sorry, page 7 of the court's decision, in the report, that's the Joint Case Management Report, plaintiffs set forth their position with respect to the received from Mr. Rezat. That information was provided to Airware at the beginning of the case, in August 2012, as demonstrated by our letters. It was provided, again, in a pleading to the court in that January 2013 Joint Case Management Report. And again, it was provided to the court in the record on the briefing of the dismissal. And that's just the indications on the record before this court. Mr. Rocha, just for my own benefit, in Claim 1, it talks about providing a barrier coupled to a surface of the carrier. Where's the surface of the carrier? Your Honor, and this was the fundamental point in the claim construction, is our position was that an accused device has a barrier portion, and that portion is coupled to the carrier portion. So there has to be a portion that prevents, obviously in line with the court's claim construction. So your view is that the surface of the carrier is what? The dividing line between portions? Correct, Your Honor. And that was a point that was vigorously disputed at claim construction. That was where Airware took the position that you could not have a device that had one substance that could serve, a portion serve as the carrier, a portion serve as the barrier. They took a hard line on that, and their position was you needed separate and distinct materials. The court ruled against them on that issue. And in fact, for the first year of the case, and this case was only 14 months, but the first year of the case, their position as demonstrated by their interrogatory response was that they were relying on that for the barrier. And if you look at their interrogatory response, and this is in the Price Declaration, which is JA 314 of 315, we have their interrogatory response in the declaration. And you can see they have five bases, the third of which was the barrier, and every single one of these bases relied on claim constructions, which they ultimately lost on. With respect to the barrier, all they said was, third, the unidentified products do not The barrier must be a layer that is distinct from the carrier and must be substantially imperbable to the volatile substance carried by the carrier. The identified products do not have distinct layers, do not have a carrier of volatile substance, therefore do not have a barrier. That's all they said. There's no documents here to support what they're saying, and that's where we asked them. We said, what are you relying on for your non-infringement basis? The Post and Counsel said they did provide documents. They did not. And there's nothing in the record. First of all, there's nothing in the record. They say in the videos there's nothing in the record to support that. Certainly nowhere in the briefing. It wasn't provided to the district court. And in fact, in July, and what this record indicates is, they said, quote, we will not list for you the documents that we may select to support our non-infringement contention. The collection of documents that we will rely upon to support our non-infringement contention is protected work product. That's July of 2013, a year into the case. They won't even tell us the documents they're relying on to support their non-infringement position. We had to file a motion with the court. I mean, this to us was basic information. If they're going to say we don't infringe, well, tell us the documents you're relying on. We had to file a motion with the court that as of when we filed our motion for dismissal was still pending. And as the court indicated in its decision, it hadn't ruled on it when it ruled on the dismissal paper. The simple fact is you cannot look at the accused products to determine how they are infused with essential oils. You cannot see, looking at that, where the essential oils are infused in that product. And that's supported by the Maeda Declaration, Dr. Maeda, who's the CEO of Clarissi, J297. There's no possibility of reverse engineering that we're aware of. There's certainly no argument, not a single allegation or argument in their brief that the products could be somehow reversed engineered. Clarissi went specifically to Airware to get this information. And as the record demonstrates, there was a contemporaneous correspondence that acknowledged everything that happened about the conversation that was provided, was verified in an affidavit from Dr. Maeda. And it wasn't just after the fact. That was provided to them from day one. And you have nothing on this record from Mr. Rezat. It's completely silent. There's no opposing declaration from him saying the conversation didn't happen or that he didn't say it. And that's what we relied on in good faith as one of the bases for infringement claims here. And again, it's important to keep in mind, when we asked them for the entire 14-month tendency case, they wouldn't tell us the documents they were relying on for the infringement position. Now, we cited all this, what we characterized as false arguments and misrepresentations of the record, which were called out in our response brief at pages 38 to 45. Seven pages of what we characterized as misrepresentations. In its reply brief, it didn't address any of this. It decided to double down and continue to say that Clarissi failed to identify a barrier. We did identify a barrier. In good faith, relying on information provided by Airware. We think the district court's decision should be, for that reason, should be affirmed in all respects. And, quite frankly, the only issue for the court to decide is whether Airware and its counsel face repercussions under Federal Rule of Appellate Procedure 38. Now, as to the legal issue in Rule 41 dismissal, we submit there was no error in the court's citation to Hector Thorne. The court didn't apply the long raw, didn't oppose a more exacting standard. In fact, opposing counsel mentioned the Westlands and Steve Dorn case. The court cites those in the second paragraph in the Rule 41 dismissal. There's no indication in the district court's decision that it could not award fees. In fact, the court clearly indicated that it had the discretion to award fees, but it  So is it your position that the district court did not use and apply Hector Thorne to the facts of your case? Well, Your Honor, that's a good question. And I think it's important to note the reason, at least to us, why they cited Hector Thorne. And the reason, it seems to us, is Airware asked for broad relief from the district court. And this is as indicated on page 12 of their opening brief. They say, Airware asked the district court for an award of fees levied against either Clerisy or its counsel pursuant to either Rule 41A2 or 28 U.S.C. 1927. So I think it was perfectly appropriate and reasonable for the court to say, with respect to 40A2, that cannot be used to apply against an attorney. And that's black letter Ninth Circuit law. You cannot use Rule 41A2 to apply to attorneys. And Airware, in fact, concedes that in their opening brief. They say later on on page 20 that, yes, you cannot use 41A2. It can only be used against a party. So I think it was perfectly appropriate and reasonable for the court to cite Hector Thorne. When the court quotes to Hector Thorne, there's certainly no error in the quote that it quoted to Hector Thorne. And it didn't just stop at Hector Thorne. The important thing is, and as the court has recognized, in the very next paragraph, the court acknowledged and agreed with defendants that it had discretion here. And simply what it chose to do is, under the facts here, that there was no reason. And, of course, the court has to give some justification for what it's doing. Because if it gives no justification, then that might be an abuse of discretion. But the specific reason provided here is that a fee award was particularly inappropriate given that plaintiffs have executed a covenant not to sue. And that reason it gave was entirely consistent with Ninth Circuit law and, quite frankly, the law around the country. The important point with respect to is the reason why courts may award fees and costs under Rule 41 as a condition of dismissal is to protect the defendant from having the expense to defend against an action against. In other words, duplicative litigation on the same claims. So in instances where there's a covenant not to sue that's executed, as is the case here, or where a party dismisses with prejudice, courts generally do not impose fees and costs as a condition of dismissal under Rule 41 because the defendant faces no risk of having to defend the claims again in future duplicative litigation. That's exactly the case here. There's no indication by airware that they don't contest the sufficiency of the covenant not to sue at all. And so as opposed to the Goldlauer case that they cite where there was an indication that the covenant not to sue was not sufficient, that's not the case here. As to the 1927 claim, there was certainly no abuse of discretion. Under Ninth Circuit law, the primus case teaches that the court's findings on sanctions issues is entitled to, quote, great deference. They don't argue any error of law here, only that the court abused its discretion in deciding the issue. They essentially say we disagree with how the court weighed the issues. That's not an abuse of discretion. Clarice's claims were supported based on information from airware. There's not a shred of evidence on this record that Clarice's counsel somehow abused court processes or engaged in frivolous tactics. There was no evidence of bad faith, no reckless pursuit, no vexatious pursuit, no intent to harass. In fact, the court made specific findings on that, that the claims were not frivolous nor was the pursuit of them vexatious or intended to harass. The court considered all of the arguments and evidence submitted by both sides, which was set forth in the district court's order, set forth the arguments that airware made, set forth the arguments that Clarice made, and it came to the correct decision here. We submitted two details at the district court, two details. What we submit are unconfirmed declarations, one from Dr. Maida, Clarice's founder, and one from Clarice's litigation counsel that set forth in detail the full factual landscape, which is important to recognize here. Again, telling me there's no affidavit from Mr. Razzas. We submit the production of technical or manufacturing documents was virtually nonexistent in this case. Again, we had to go to the court because they refused to tell us the documents they were relying on. And then even under Ninth Circuit law, it's clear that even a lack of merit, which we dispute, cannot support the imposition of sanctions under 1927 absent a specific finding of bad faith. There was no finding, not a shred of evidence of bad faith here. In fact, the only evidence we submit is evidence of good faith, which properly supported the denial in 1927. I just have a few seconds left. So in sum, we submit the court should affirm here under Rule 36, we clearly identified a barrier based on information, specific information they provided. There was no abuse of discretion in the court declining the Rule 41 dismissal, and there was no abuse of discretion on the 1927 claim. Thank you, Your Honors. Thank you. Your Honor, on his main point on JA-121, if you look at that sentence, the only thing that sentence says is that the function is not there, that the substance doesn't touch the nose. There's nothing about it that says that there's a barrier there, and they've never shown what the barrier is. You can look at every chart. You can look at every piece of paper. They've never identified the actual structure that's going to be a barrier. Today, if he's saying it's the outer ring, it's interesting, but it's never been said until today. And so it's just, it really is that they never had a viable infringement theory. The couple, too, I'll just let you look at the claim construction order. You still need to have something. The court even said you need to have something that couples the barrier to the carrier. That is why they've never identified a barrier on this one-piece product. As to the documents, we refused to identify which documents we're relying on, but implicit in that is we provided the documents. And so I don't know why we keep – Are they in the joint appendix somewhere? They're not. We did not put them in, I don't think. And the only other point I'd make is the Goldlauer case, it is on all fours in terms of having reimbursement of fees and coming out not to sue. The court was very clear to say there's still a real injury, and that's what the purpose of the Ninth Circuit's rule is. The Ninth Circuit's rule, if you look at those cases, Steve Adoring and Westlands, very clear in saying our purpose isn't just to say future litigation. Our purpose is to look at the fees incurred in defending this action to make sure that there's – if it seems fair to reimburse the defendant, we should. So the cases from the Fifth Circuit where you can say, hey – or the cases from the circuit where – the Missouri Circuit, the Eighth Circuit, where they say a covenant not to sue obviates the need. That is clearly not the law in the Ninth Circuit, and it's contrary to the purpose that the law actually articulates in the Ninth Circuit. So with that, Your Honor. Thank you.